**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**TIFFANY L. K.**

                                    **Plaintiff,**                          **25-CV-00134-HKS**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                                    **Defendant.**

<u>**DECISION AND ORDER**</u>

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g).

**BACKGROUND**

On June 18, 2015, plaintiff, at the age of 47, protectively applied for Title XVI Supplemental Social Security Income Benefits ("SSI") with the Social Security Administration ("SSA"), alleging a disability onset date of April 21, 2011. Dkt. #3, pp. 79, 129-134.[1] Plaintiff alleged she was disabled due to anxiety, depression, right shoulder problem, punctured lung, shattered rib, left knee pain, gastritis, hepatitis C, asthma, sleep disorder, pleurisy, and varicose veins. Dkt. #3, p. 161.

---

[1] Record citations use the page number(s) generated by the Court's electronic filing system.

Plaintiff's claim was denied on October 15, 2015, Dkt. #3, pp. 80-85, and plaintiff requested a hearing. A video hearing was held on November 14, 2017 before Administrative Law Judge ("ALJ") Benjamin Chaykin. Dkt. #3, pp. 35-59. Plaintiff appeared pro se. On April 19, 2018, the ALJ issued an unfavorable decision. Dkt. #3, pp. 19-34. The Appeals Council denied plaintiff's request for review, Dkt. #3, pp. 8-13, and plaintiff filed an action in this Court appealing that determination on April 11, 2019. *Tiffany L. K. v. Comm'r of Soc. Sec.*, Case No. 19-CV-474-HBS.

On September 18, 2020, Judge Hugh Scott issued a Decision and Order remanding plaintiff's claim for a new hearing for further development of the record. Dkt. #3, pp. 697-704.

Thereafter, plaintiff amended her alleged onset date to September 22, 2017. Dkt. #3, p. 809. On July 19, 2021, a telephonic hearing was held by ALJ Stephan Bell, and plaintiff appeared with counsel. Dkt. #3, pp. 643-674. On August 16, 2021, the ALJ issued an unfavorable decision. Dkt. #4, pp. 80-101. The Appeals Council denied review. Dkt. #3, pp. 609-612.

On August 1, 2023, plaintiff filed a new claim for SSI benefits. Dkt. #4, p. 130. Plaintiff alleged a disability onset date of March 1, 2018 due to depression, anxiety, PTSD, asthma, COPD, knee giving out, having only one-quarter of a spleen, and gastritis. Dkt. #4, p. 139.

On August 31, 2023, plaintiff filed another action in this Court, appealing the August 16, 2021 unfavorable decision. *Tiffany L. K.*, Case No 1:23-cv00905-EAW. On December 8, 2023, Judge Elizabeth Wolford granted the Commissioner's unopposed motion to remand this claim "to further assess the claimant's obstructive sleep apnea and reconsider the Claimant's Residual Functional Capacity and ability to perform work in the national economy." *Id.*, Dkt. #7, #9.

On March 20, 2024, the SSA denied plaintiff's new claim for SSI benefits. Dkt. #4, pp. 135-139.

On April 4, 2024, the Appeals Council remanded plaintiff's first claim for another hearing before the ALJ and consolidated it with her August 1, 2023 claim. Dkt. #4, pp. 118-123. This order stated:

> The hearing decision does not contain an adequate evaluation of the nature and severity of the claimant's sleep apnea impairment. The District Court found the claimant's sleep apnea required further evaluation to determine the severity of the impairment. . . The Administrative Law Judge complied with the remand order and found the claimant's obstructive sleep apnea was non-severe.. . . *However, the record indicates this impairment causes more than a minimal effect on the claimant's ability to work.* In December 2016, the claimant reported that she had poor sleep and, following a sleep study in August 2017, was diagnosed with sleep apnea. . . The claimant was prescribed a CPAP machine, and the record notes she received refill equipment in October 2018. . . At the November 2017 hearing, the claimant testified that she was unable to work, in part, due to sleep problems and [she] had difficulty sleeping and waking up. . . Later, at the 2021 hearing, the claimant again testified that she was unable to work, in part, due to her sleep disorder and inability to wake up in the morning. . . . *Further consideration of the nature,*

> *severity, and limiting effects of the claimant's sleep apnea is*
> *warranted.*

Dkt. #4, p. 120 (emphasis added).

After plaintiff's medical records were updated, ALJ Bell held another telephonic hearing on October 28, 2024. Dkt. #4, pp. 53-73. Plaintiff appeared with counsel.

Upon examination by the ALJ, plaintiff testified that she had undergone surgery the month before to remove scar tissue from her intestines from a gunshot wound she suffered thirty years ago, and she also had two hernias repaired. Dkt. #4, pp. 59-60.

Plaintiff also testified that she was still having problems sleeping and that she uses a sleep apnea machine every night, although she might not keep it on the whole night, and she has not noticed any improvement in her sleep. Dkt. #4, p. 61. She occasionally takes Tylenol P.M., and she was previously prescribed Trazadone, but she still wakes up often and has trouble getting up in the morning. Dkt. #4, pp. 61-62.

Next, plaintiff testified that she has anxiety and depression and sometimes does not feel like doing anything, leaving the house, or getting out of bed. Dkt. #4, p. 62. She has more bad days than good days, and she cannot take medications for depression because they give her severe headaches. Dkt. #4, p. 63. She does take medication for anxiety which does not cause side effects, but she testified that she does not think it really works. *Id.*

~ 4 ~

Plaintiff also testified that her fiancé and ten-year old granddaughter help her around the house. Dkt. #4, pp. 63-64.

Plaintiff next testified that she had a knee injury the previous October, she was diagnosed with arthritis in that knee, and she had been going to physical therapy. Dkt. #4, p. 64. Sometimes her knee gives out when she climbs stairs, but she does not wear a brace, and she takes Ibuprofen or Tylenol. *Id.* She also does not use an assistive device. *Id.*

The ALJ asked plaintiff about her varicose veins, and she testified that she had not returned to treatment for that condition but she still wears compression stockings and elevates her legs. Dkt. #4, pp. 64-65.

The ALJ then asked plaintiff about her daily activities, and she testified that she does not do a whole lot, but she watches television, tries to do the dishes, plays games on her phone, and cooks using the microwave. Dkt. #4, p. 65. If she does dishes, she needs to take a break after 10-15 minutes and she lies on the couch. Dkt. #4, pp. 65-66.

Next, plaintiff testified that she had tried to work since applying for disability benefits. She tried bartending but could not do the standing, and her boyfriend helped her do Door Dash, but she could not do that for long periods either. Dkt. #4, p. 66.

Upon examination by her counsel, plaintiff testified that she had been using a sleep apnea machine since 2015, and she has difficulty waking up in the morning due to sleep problems, as well as depression, which causes her to miss medical appointments. Dkt. #4, p. 67. Some of her doctors discharged her because she missed appointments. *Id.* Plaintiff also testified that she naps every day for an hour or two. Dkt. #4, p. 68.

Next, plaintiff testified that she can stand for about half an hour before experiencing pain; she can sit; and she cannot lift anything heavy due to her right shoulder problems and hernias. Dkt. #4, pp. 68-69.

The ALJ then heard testimony from Dawn Blythe, a vocational expert ("VE"). After noting that plaintiff had no past relevant work, the ALJ asked the VE to consider a hypothetical person of plaintiff's age, education, and past work experience who could perform work at the light exertional level; occasionally climb ramps, stairs, ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; occasionally work in dust, odors, fumes, pulmonary irritants, and vibration; and who could perform simple, routine, and repetitive tasks, and make simple work-related decisions. Dkt. #4, pp. 69-70.

The VE testified that such an individual would be capable of performing the jobs of sales attendant, cashier II, and storage facility rental clerk. Dkt. #4, p. 70.

The ALJ then asked whether the person could perform work if she needed to elevate her legs at waist height for an hour a day outside of normal breaks, and the VE said she could not. *Id.* The ALJ then asked about the person arriving late to work two days a month, and the VE testified that she considers arriving late the same as an absence, which would be disqualifying if it occurred more than one day a month. *Id.*

The VE also stated that her testimony was consistent with the Dictionary of Occupational Titles ("DOT"), except that the DOT does not address elevating one's legs or absenteeism, and her testimony on those issues was based on her training and experience. Dkt. #4, pp. 70-71.

Plaintiff's counsel then asked the VE whether the person could perform any job in the national economy if she needed to nap for one to two hours a day, and the VE stated that she could not. Dkt. #4, p. 71. The VE also testified that the job numbers she cited came from a program called "Job Browser[2] Pro," which uses numbers from the Department of Labor's Bureau of Statistics, and that she uses DOT-specific numbers for full-time jobs. *Id.*

As the hearing was concluding, plaintiff stated that she also has COPD and asthma, which make it difficult to walk her dog or climb stairs. Dkt. #4, p. 72.

---

[2] The hearing transcript spells this word "Brower," but that appears to be a typographical error.

On November 14, 2024, ALJ Bell rendered a partially favorable decision finding that plaintiff was not disabled prior to September 22, 2022, but that when she turned 50 years old, her age category changed to an individual of advanced age and, thus, she was disabled after that date by direct application of Medical-Vocational Rule 202.04.[3] Dkt. #4, pp. 24-52.[4] This action followed.

## DISCUSSION AND ANALYSIS

### Legal Standards

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically

---

[3] *See* Medical Vocational Guideline 202.04, 20 C.F.R. Pt. 404, Subpt. P, App. 2.

[4] The administrative records consistently state plaintiff's birthday as September 23, rather than September 22, but the parties do not discuss this apparent discrepancy, and it appears immaterial.

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382(a)(3)(A). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a)(4). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 416.920(g)(1).

Here, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff did not engage in substantial gainful activity since the amended disability onset date of September 22, 2017; (2) since the amended disability onset date, plaintiff has had the following severe impairments: peripheral vascular

disease, chronic obstructive pulmonary disease ("COPD")/asthma, obstructive sleep apnea, right shoulder bursitis, depressive disorder, and anxiety disorder; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) since the amended disability onset date, plaintiff retained the RFC to perform light work[5] except that she can occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch, crawl, and climb ladders, ropes, or scaffolds; occasionally tolerate vibration and exposure to dust, odors, fumes, and pulmonary irritants; perform simple, routine, and repetitive tasks and make simple work-related decisions; (5) plaintiff has no past relevant work; (6) beginning on the amended disability onset date, plaintiff was an individual closely approaching advanced age, and when she turned 55 years old on September 22, 2022, her age category changed to an individual of advanced age; (7) prior to September 22, 2022, considering plaintiff's age, education, work experience, and RFC, plaintiff was capable of performing jobs in the national economy of Sales Attendant, Cashier II, and Storage Facility Clerk; (8) beginning on September 22, 2022, when plaintiff turned 55 years old, no jobs existed in significant numbers in the national economy which plaintiff could perform, and she thus became disabled on that date by application of Medical-Vocational Rule 202.04; and (9) plaintiff was thus not disabled prior to September 22, 2022, but she became disabled on that date and has continued to be disabled through the date of this decision. Dkt. #4, pp. 31-42.

---

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities." 20 C.F.R. § 416.967(b).

For claims filed before March 27, 2017, the SSA regulations provide that, unless the ALJ affords controlling weight to a treating source's medical opinion, the ALJ is required to consider and weigh all medical opinions of record, whether those opinions are from acceptable medical sources, other medical sources or non-medical sources, with consideration of the following factors for determining the appropriate weight to afford such opinions: (1) the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidence in support of the medical opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) other factors brought to the SSA's attention that tend to support or contradict the opinion. *Saxon v. Astrue*, 781 F. Supp.2d 92, 103-04 (N.D.N.Y. 2011); *See* 20 C.F.R. § 404.1527 (c). The factors to be considered in evaluating opinions from non-treating medical sources are the same as those for assessing treating sources, except that consideration of the treatment relationship is replaced with consideration of whether the non-treating source examined the plaintiff. *White v. Saul*, 414 F. Supp.3d 377, 383 (W.D.N.Y. 2019). So long as the ALJ's rationale is clear, however, the ALJ need not address each factor individually. *See Atwater v. Astrue*, 512 Fed. App'x 67, 70 (2d Cir. 2013).

Genuine conflicts in the medical evidence are for the ALJ to resolve. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). Even where the ALJ's determination does not perfectly correspond with any of the opinions of medical sources cited in a decision, the ALJ is entitled to weigh all the evidence available to make a residual functional capacity finding that is consistent with the record as a whole. *Trepanier v. Comm'r of Soc.*

*Sec.*, 752 Fed. App'x 75, 79 (2d Cir. 2018); *Matta v. Astrue*, 508 Fed. App'x 53, 56 (2d Cir. 2013). An ALJ need not reconcile every conflict in the record but must set forth the crucial factors in his determination with sufficient specificity to enable a reviewing court to decide whether the determination is supported by substantial evidence. *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).   While the ALJ is not obligated to explicitly reconcile every conflicting shred of medical evidence, the ALJ cannot selectively choose evidence in the record to support the ALJ's conclusions. *Gecevic v. Sec. of Health & Human Servs.*, 882 F. Supp. 278, 286 (E.D.N.Y. 1995). A plaintiff is entitled to understand why the ALJ chose to disregard portions of medical opinions that were beneficial to his application for benefits. *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp.2d 288, 297 (W.D.N.Y. 2006). Thus, when an ALJ chooses to adopt only portions of a medical opinion, the ALJ must explain his decision to reject the remaining portions. *Tanya Y. v. Comm'r of Soc. Sec.*, 20-CV-712, 2022 WL 1115458, at *2 (W.D.N.Y. Apr. 14, 2022).

### Challenge to the ALJ's Decision

Plaintiff makes a single challenge to the ALJ's decision: she argues that he failed to properly evaluate her sleep apnea as directed by the Appeals Council. Dkt. #10-1, pp. 11-14. The Court disagrees.

First, plaintiff's argument appears to rest on the false premise that the ALJ was required to include in the RFC functional limitations specifically based on her sleep apnea. Dkt. #10-1, pp. 12-13. However, the Appeals Council did not go that far; instead,

it merely directed the ALJ to "further consider[ ] the nature, severity, and limiting effects of the claimant's sleep apnea." Dkt. #4, p. 120. The ALJ did exactly that.

After concluding at step two—in compliance with the Appeals Council's order—that plaintiff's sleep apnea constituted a severe impairment, the ALJ discussed the record evidence regarding plaintiff's functional limitations.

The ALJ began by recounting plaintiff's hearing testimony, including that she continues to have difficulty sleeping and waking up; she uses her CPAP machine; she takes medications to help her sleep which do not help; she has missed appointments due to oversleeping; and she naps every day. Dkt. #4, p. 36.

While plaintiff faults the ALJ's treatment of her testimony, Dkt. #10-1, p. 13, it "is well-settled that while the ALJ is required to consider Plaintiff's subjective complaints, the ALJ is not required to grant disability benefits based on subjective complaints alone, particularly where those subjective complaints are contradicted by other evidence of record." *Andrew P. v. Comm'r of Soc. Sec.*, 719 F. Supp.3d 248, 255 (W.D.N.Y. Feb. 27, 2024) (citation omitted). *See also Charles B. v. Comm'r of Soc. Sec.*, 8:24-CV-01232 (ML), 2025 WL 2816893, at *8 (N.D.N.Y. Sept. 26, 2025) (noting that "a claimant's subjective description of his symptoms cannot establish disability by itself," and "a reviewing court must give great deference to the ALJ's assessment of hearing testimony").

Here, the ALJ explained that plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not fully consistent with the overall medical evidence. Dkt. #4, p. 36. In support of this conclusion, the ALJ cited plaintiff's longitudinal medical records which contained objective evidence of plaintiff's diagnosis of sleep apnea but which also showed that her symptoms had responded well to conservative treatment. *Id.*

The ALJ then turned specifically to the Appeals Council's remand order. Dkt. #4, p. 37. The ALJ noted plaintiff's sleep apnea diagnosis and that she has been prescribed a CPAP machine, but he again observed that plaintiff's hearing testimony about being unable to work due to an inability to wake up was not supported by the record. *Id.* He also noted that plaintiff was able to attend college classes and care for her granddaughter. *Id.*

This was appropriate because "a diagnosis does not necessarily translate into a disability finding, so the ALJ must consider the functional limitations imposed by the diagnosed condition." *Charles B.*, 2025 WL 2816893, at *6.

The ALJ then reviewed medical opinions of record. First, he considered the consultative psychological examinations conducted by Dr. Janine Ippolito in 2015 and 2024. Dkt. #4, p. 37. In her 2024 report, Dr. Ippolito noted plaintiff's statements regarding her conditions, including sleep apnea, and that plaintiff stated that she has difficulty falling asleep and wakes up at night. Dkt. #4, p. 407.

~ 14 ~

After conducting a mental status examination, however, Dr. Ippolito opined that plaintiff was able to understand, remember, or apply simple and complex directions and instructions; use reason and judgment to make work-related decisions; sustain concentration and perform a task at a consistent pace; sustain an ordinary routine and regular attendance at work; and maintain personal hygiene and appropriate attire with no evidence of limitation. Dkt. #4, p. 410. The ALJ gave significant weight to Dr. Ippolito's opinion, a conclusion which plaintiff does not challenge. Dkt. #4, p. 39.

The ALJ also discussed the opinions of several state examiners, Dr. Tzetzo, Dr. Donna Miller, and Dr. Juriga, who opined regarding various limitations which plaintiff also does not now challenge. In particular,  Dr. Miller opined in 2015 and 2024 that plaintiff should avoid respiratory irritants such as dust, irritants, fumes, gases, and poor ventilation, albeit based on her asthma. Dkt. #3, p. 430; Dkt. #4, p. 113.

Next, the ALJ gave significant weight to the opinion of consultative internal medical examiner Dr. Hongbiao Liu "due to his expertise, his physical examination of the claimant, and the relative consistency of his opinions with the longitudinal medical evidence of record, including the claimant's good response to ongoing conservative treatment modalities, as discussed above." Dkt. #4, p. 39.

Dr. Liu examined plaintiff in February 2024 and noted her history of sleep apnea, stating "she has been using a CPAP machine for sleep apnea for more than a

~ 15 ~

decade, maintaining stability in this aspect of her health." Dkt. #4, p. 414. Dr. Liu opined that plaintiff had mild physical limitations and "should avoid exposure to smoke, dust and other respiratory irritants." Dkt. #4, pp. 38-39, 412-420. Again, plaintiff does not challenge the ALJ's assessment of Dr. Liu's opinion.

Plaintiff does, however, challenge the ALJ's assignment of "very little weight" to a check-box medical statement submitted by her primary care doctor, Dr. Daniel Molloy, in October 2024. Dkt. #4, p. 40; Dkt. #5, p. 196. On a one-page form provided by plaintiff's counsel, Dr. Molloy checked "yes" to three questions regarding the validity of plaintiff's concerns about being unable to work due to oversleeping and daytime sleepiness associated with her sleep apnea. Dkt. #5, p. 196.

Plaintiff asserts in her brief that the ALJ afforded this opinion little weight "without adequate explanation." Dkt. #10-1, p. 13. That is not accurate.

The ALJ explained that Dr. Molloy's opinion was "inconsistent with the record as a whole, including the well-supported opinions of the consultative examiners." Dkt. #4, p. 40. Indeed, the ALJ noted that in the record of plaintiff's diagnosis in July 2017, her sleep apnea was described as "mild." Dkt. #3, p. 570. Moreover, the August 2017 titration sleep study record attached to Dr. Molloy's opinion stated that plaintiff responded favorably to CPAP use; she had a decreased number of respiratory events and improved sleep architecture; and her snoring had resolved. Dkt. #3, p. 587.

Finally, the ALJ noted that the treatment records contained no evidence of plaintiff regularly missing appointments due to sleep apnea symptoms. Dkt. #4, p. 40.

In sum, the ALJ complied with the Appeals Council's order to consider the effects of plaintiff's sleep apnea on her functioning. Plaintiff's disagreement with the ALJ's conclusion that she did not have limitations beyond those contained in the RFC is thus "merely an invitation to this Court to reweigh the evidence, which is simply not a basis for remand." *Amber G. v. Comm'r of Soc. Sec.*, CASE NO. 6:24-cv-06634 (JGW), 2026 WL 865216, at *8 (W.D.N.Y. Mar. 30, 2026) (citations omitted). *See also Eric V. v. Comm'r of Soc. Sec.*, 24-CV-1118 (JLS), 2026 WL 1290666, at *4 (W.D.N.Y. May 11, 2026) ("So long as an ALJ considers all the medical evidence and appropriately analyzes the medical opinions, an RFC consistent with the record is not error.") (citation omitted); *Charles B.*, 2025 WL 2816893, at *8 ("Plaintiff's challenges to the ALJ's evaluation of the medical opinion and testimonial evidence and the resulting RFC determination are largely premised on a disagreement over how the ALJ resolved arguably conflicting evidence about Plaintiff's functional limitations. It is not sufficient that reasonable parties could interpret the evidence differently, and it is not a function of this reviewing Court to reweigh the evidence.").

For these reasons, the Court concludes that the ALJ's decision is supported by substantial evidence and must be upheld.

~ 17 ~

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #10) is denied, and the Commissioner's motion for judgment on the pleadings (Dkt. #11) is granted.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

DATED:      Buffalo, New York

May 21, 2026

_s/ H. Kenneth Schroeder, Jr._
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**